# Exhibit 1

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*



**FILED/ENDORSED**

APR 1 4 2021

By: _____ A. Penn _____
Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TRANSAMERICA PREMIER LIFE INSURANCE COMPANY, a Stock Company; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROMAN CATHOLIC BISHOP OF SACRAMENTO, a California Nonprofit Organization

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California - County of Sacramento
Gordon D. Schaber Sacramento County Courthouse
720 9th Street
Sacramento, CA  95814

CASE NUMBER:
*(Número del Caso):*
34 2021 00298490

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott Ditfurth, SBN 238127 / Christopher M. Moffitt, SBN 255599
3390 University Ave., 5th Floor
Riverside, CA  92501 / Tel: (951) 686-1450; Fax: (951) 686-3083

DATE:                                    Clerk, by               A. PENN          , Deputy
*(Fecha)*  APR 1 4 2021          *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*  Transamerica Premier life Insurance company a stock company
   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

BY FAX

1  SCOTT W. DITFURTH, Bar No. 238127
   scott.ditfurth@bbklaw.com
2  CHRISTOPHER M. MOFFITT, Bar No. 255599
   chris.moffitt@bbklaw.com
3  BEST BEST & KRIEGER LLP
   3390 University Avenue, 5th Floor
4  P.O. Box 1028
   Riverside, California 92502
5  Telephone:  (951) 686-1450
   Facsimile:  (951) 686-3083
6
7  Attorneys for Plaintiff
   ROMAN CATHOLIC BISHOP OF
8  SACRAMENTO, a California Nonprofit
   Organization

9
                 SUPERIOR COURT OF CALIFORNIA
10
                    COUNTY OF SACRAMENTO
11

12
   ROMAN CATHOLIC BISHOP OF          Case No.   34 2021 00298490
13 SACRAMENTO, a California Nonprofit
   Organization,                     COMPLAINT FOR:
14
                 Plaintiff,          1.  Breach of Contract;
15                                   2.  Breach of the Implied Covenant of Good
        v.                               Faith and Fair Dealing (Bad Faith);
16                                   3.  Fraudulent Concealment;
   TRANSAMERICA PREMIER LIFE         4.  Declaratory Relief;
17 INSURANCE COMPANY, a Stock        5.  Unfair Business Practices
   Company; and DOES 1-50, inclusive,
18                                   [Unlimited Jurisdiction]
                 Defendants.
19                                   DEMAND FOR JURY TRIAL

20

21

22

23

24

25

26

27

28

COMPLAINT

51316.00003\33675430.3

Plaintiff ROMAN CATHOLIC BISHOP OF SACRAMENTO, a California Nonprofit Organization ("Plaintiff") is informed and believes, and on that basis alleges, as follows:

### NATURE OF ACTION

1.      This is an insurance bad faith action by Plaintiff against Defendant TRANSAMERICA PREMIER LIFE INSURANCE COMPANY, a Stock Company ("Transamerica"), and DOES 1 through 50, inclusive (collectively, Transamerica and DOES 1 through 50, inclusive, are referred to herein as "Defendant").

2.      During the term of the Policy, Plaintiff was named as a beneficiary of the Policy, and the conditions precedent for Defendant to pay Plaintiff for covered claims were met. Despite this, Defendant then failed to properly and in good faith adjust Plaintiff's claims for benefits under the Policy, conducted an improper investigation of Plaintiff's claims, and improperly denied payment of the Policy's benefits to the Plaintiff.

3.      Plaintiff brings this action to recover compensatory and punitive damages for Defendant's bad faith conduct in adjusting and handling Plaintiff's claims, and refusing to pay benefits under the Policy to Plaintiff.

### PARTIES

4.      Plaintiff ROMAN CATHOLIC BISHOP OF SACRAMENTO, a California Nonprofit Organization ("Plaintiff"), is and was, an entity organized and operating in the State of California and a beneficiary under the Policy.

5.      Plaintiff is informed and believes, and on that basis alleges, that Defendant TRANSAMERICA PREMIER LIFE INSURANCE COMPANY ("Transamerica"), is and was, at all relevant times, an insurance company and corporation, conducting business in the State of California and availing itself of the privileges and benefits of the State of California.

6.      Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 50, inclusive, and therefore, sues such defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities of said fictitiously named defendants

51316.00003\33675430.3

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

when their true names and capacities have been ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

7.     Plaintiffs are informed, believe, and thereon allege that all defendants, including the fictitious Doe defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, this allegation is pleaded as an "alternative" theory wherever not doing so would result in a contradiction with other allegations.

### *JURISDICTION AND VENUE*

8.     This Court has jurisdiction over the entire action by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of the Court.  The acts and omissions complained of in this action took place, in whole or in part, in the State of California.

9.     Venue is proper because the contract was entered into, performance was due, and/or the acts and omissions complained of took place within the venue of this Court, and/or one or more defendants reside within the venue of this Court.

### *GENERAL ALLEGATIONS*

10.    All allegations in this complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

11.    In or about December 2016, Plaintiff submitted an application to Transamerica for

- 2 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

an excess loss insurance policy. Transamerica issued a policy therefor to Plaintiff, effective January 1, 2017 through January 1, 2018. A true and correct copy of the Transamerica Excess Loss Coverage policy ("Policy") is attached hereto as Exhibit "A" and is incorporated herein by this reference. The Policy provided, after a $250,000 deductible per covered person, coverage for a Medical with Stand Alone Prescription Drug Program, with no coverage limit. (See Exhibit "A" at p. SCHED-1.)

12.     In 2017, Anita Puga and Stephanie Aguilar, both employees of Plaintiff and covered by Plaintiff's Blue Shield of California health insurance policy and EnvisionRx prescription policy, incurred significant medical and prescription costs. Specifically, while employees of Plaintiff and covered by these policies, Ms. Puga incurred approximately $322,682.00 in medical costs and $5,105.94 in prescription costs; Ms. Aguilar incurred approximately $353,618.00 in medical costs and $39,063.44 in prescription costs. (Collectively, Ms. Aguilar's and Ms. Puga's medical and prescription costs described above and totaling approximately $720,469.38 are referred to herein as the "Amount Claimed.") Ms. Puga, Ms. Aguilar, and/or Plaintiff on their behalf, sought coverage for the Amount Claimed from their relevant insurers but were denied coverage. Thereafter Plaintiff, as beneficiary of the Policy, made claims ("Claims") with Transamerica under the Policy for the Amount Claimed. (The Amount Claimed less the $250,000 deductibles each for Ms. Aguilar and Ms. Puga— approximately $220,469.38—is referred to herein as the "Amount Owed.")

13.     In or about January 2019, Defendant, via Prodigy Health Insurance Services, LLC, denied Plaintiff's Claims for the Amount Owed and failed to pay full Policy benefits to Plaintiff pursuant to the terms of the Policy. Defendant, in bad faith, claimed that Ms. Puga and Ms. Aguilar were ineligible for employment and/or insurance coverage during some portion or all of the period during which they incurred the relevant medical and prescription drug costs.

14.     However, Defendant knew that benefits were owed under the Policy by Defendant to Plaintiff, and that benefits on the Claims were not paid demonstrates Defendant's egregious and wanton conduct. Defendant maliciously, oppressively, and/or fraudulently denied the Claims under the Policy.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

- 3 -

15.     Plaintiff has pursued appeals of Defendant's denial of the Claims; Defendant to date has not reversed its decision and has not paid on Plaintiff's Claims.

16.     Plaintiff has and continues to sustain significant damages as a result of Defendant's wrongful conduct in an amount to be proven at trial.

17.     Plaintiff has performed each and every obligation and condition required of it, save those that the Defendant has waived, forfeited and/or is estopped from asserting.

### FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT
**(By Plaintiff against All Defendants)**

18.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

19.     Plaintiff has faithfully performed all obligations required to be performed by it under the terms of the insurance contracts Defendant issued to Plaintiff, except to the extent performance may have been excused by, among other things, Defendant's bad faith conduct and breach of the insurance Policy.

20.     Plaintiff was the beneficiary under a valid insurance Policy issued by the Defendant, which was in effect on the dates the medical and prescription costs included in the Amount Claimed were incurred.

21.     Defendant breached the terms of the contract by failing to fully pay benefits due under the contract and by forcing Plaintiff to institute this litigation.

22.     As a direct, proximate, and legal result of Defendant's breach(es) of the contract, Plaintiff has been, and continues to be, damaged in an amount in excess of the jurisdictional limits of this Court, including but not limited to: the loss of benefits due under the contract, consequential damages including interest on monies Plaintiff could and should have received promptly, but which they did not receive in a timely fashion as a result of Defendant's breach of contract, and other fees, expenses and costs to be proven at trial.

23.     Plaintiff has also sustained other economic losses as a direct, proximate, and legal result of Defendant's conduct, in an amount to be proven at trial.

- 4 -

51316.00003\33675430.3

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

### *SECOND CAUSE OF ACTION FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (BAD FAITH)*
**(By Plaintiff against All Defendants)**

24.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

25.     The insurance Policy identified in this action contained an implied covenant of good faith and fair dealing, whereby Defendant agreed to perform its obligations under the Policy in good faith, to deal fairly with Plaintiff, and not to unreasonably deprive Plaintiff of its rights.

26.     Defendant tortiously breached its implied covenant of good faith and fair dealing arising from the insurance contract by unreasonably withholding benefits due under the Policy, by failing to conduct a fair and objective claims investigation, by failing to treat Plaintiff and all other similarly situated insureds consistently, by failing to pay Policy benefits, by unreasonably delaying payments and the final resolution of the claim, and by other conduct, including but not limited to that expressly set forth in this complaint, after accepting insurance premiums from the Plaintiff.

27.     Despite Plaintiff's demands for benefits pursuant to the Policy, Defendant continues to refuse payment and continue to engage in unlawful insurance practices and misrepresentations. Such bad faith conduct constitutes a continuing tort which is causing Plaintiff continued damages.

28.     Defendant engaged, and continues to engage, in a course of conduct to further its own economic interests and in violation of its obligations to Plaintiff. This conduct includes, but is not limited to that conduct alleged in this complaint and the following:

    a.     Not attempting in good faith to effectuate prompt, fair, and equitable payment of Plaintiff's benefits when the amount owed was reasonably clear;

    b.     Refusing to pay insurance benefits which a reasonable person would have believed Plaintiffs were entitled to receive;

    c.     Unreasonably delaying payments to Plaintiff in bad faith, knowing Plaintiff's Claims for benefits under the Policy to be valid, in an attempt to coerce Plaintiff into accepting less than the fair value for the Policy;

- 5 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

51316.00003\33675430.3

d.   Unreasonably refusing to pay benefits to Plaintiff in bad faith, knowing Plaintiff's claim for benefits under the Policy to be valid;

e.   Failing to thoroughly and objectively investigate Plaintiff's claim and falsely claiming that Plaintiff's employees were not eligible for employment and/or insurance coverage;

f.   Unlawfully engaging in a consistent pattern of denying benefits under insurance policies;

g.   Compelling Plaintiff to incur legal expenses, including initiating litigation, to obtain insurance benefits which Defendant knew or reasonably should have known were owed to Plaintiff;

h.   Interpreting the Policy in an unduly restrictive manner;

i.   Interpreting the Policy in an unlawful manner;

j.   Unreasonably failing to adopt and implement reasonable standards for the prompt investigation and processing of the benefits asserted by Plaintiff; and

k.   Unreasonably failing to fully pay for Plaintiff's benefits.

29.   Plaintiff is informed, believes, and thereon alleges, that Defendant breached its duty of good faith and fair dealing owed to Plaintiff by other acts or omissions of which Plaintiff is presently unaware and which will be shown according to proof at the time of trial.

30.   Defendant's conduct described herein constitutes part of Defendant's overall scheme to reduce the costs of legitimate insurance claims.

31.   Without any reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Defendant has failed to and refused to act in good faith or act fairly toward Plaintiff, and Defendant has, in bad faith, failed and refused to perform its obligations under the insurance Policy, and under the laws of the State of California.

32.   As a direct, proximate, and legal result of said breaches of the covenant of good faith and fair dealing by Defendant, Plaintiff has been, and continues to be, damaged in an amount including, but not limited to, loss of Policy benefits and loss of money under the Policy. Plaintiff has been required to expend attorney's fees and costs in pursuing relief to which they are

- 6 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

1    entitled as a matter of law.  (See *Brandt v. Superior Court* (1985) 37 Cal.3d 813.)

2    33.    As a direct, proximate, and legal result of the wrongful conduct of Defendant,

3    Plaintiff has sustained other economic damages, as set forth above, and other damages in an

4    amount to be proven at trial.

5    34.    On the basis of all of the facts alleged hereinabove, Defendant's conduct and

6    actions were despicable, and were done maliciously, oppressively, and fraudulently, with a willful

7    and conscious disregard of Plaintiff's rights, thereby subjecting Plaintiff to unjust hardship and

8    distress, entitling Plaintiff to punitive damages under Civil Code section 3294.  Defendant's

9    officers, directors, and managing agents were personally involved in the decision-making process

10   with respect to the misconduct alleged herein, and/or authorized and/or ratified such misconduct.

### THIRD CAUSE OF ACTION FOR FRAUDULENT CONCEALMENT
**(By Plaintiff against All Defendants)**

35.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

36.    As Plaintiff's insurer, Defendant and its brokers and agents occupied a position of trust placed upon them by Plaintiff; accordingly, Defendant owed a fiduciary duty to Plaintiff.

37.    As set forth above, Defendant breached its fiduciary duty to Plaintiff by actively and intentionally concealing material facts, including but not limited to Defendant's true plans, which were to enrich itself for its own financial gain at Plaintiff's expense.

38.    Plaintiff justifiably relied upon Defendant's acts and omissions.

39.    As a direct, proximate, and legal result of said breaches of the covenant of good faith and fair dealing by Defendant, Plaintiff has been, and continues to be, damaged in an amount including, but not limited to, loss of Policy benefits and loss of money under the Policy. Plaintiff has been required to expend attorney's fees and costs in pursuing relief to which they are entitled as a matter of law.  (See *Brandt v. Superior Court* (1985) 37 Cal.3d 813.)

40.    As a direct, proximate, and legal result of the wrongful conduct of Defendant, Plaintiff has sustained other economic damages, as set forth above, and other damages in an

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

- 7 -

1    amount to be proven at trial.

2         41.    On the basis of all of the facts alleged hereinabove, Defendant's conduct and

3    actions were despicable, and were done maliciously, oppressively, and fraudulently, with a willful

4    and conscious disregard of Plaintiff's rights, thereby subjecting Plaintiff to unjust hardship and

5    distress, entitling Plaintiff to punitive damages under Civil Code section 3294.   Defendant's

6    officers, directors, and managing agents were personally involved in the decision-making process

7    with respect to the misconduct alleged herein, and/or authorized and/or ratified such misconduct.

8

9                    **FOURTH CAUSE OF ACTION FOR DECLARATORY RELIEF**
                          **(By Plaintiff against All Defendants)**
10

11        42.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

12   preceding paragraphs of this complaint as though fully set forth herein.

13        43.    An actual controversy has arisen and now exists between the Plaintiff, on the one

14   hand, and Defendant, on the other hand, in that Plaintiff contends, among other things, that the

15   benefits due under the Policy are due to Plaintiff, while Defendant denies and does not agree with

16   Plaintiff's contention.

17        44.    A judicial determination as to the foregoing matters is necessary and appropriate at

18   this time, under the circumstances, so that Plaintiff and Defendant may ascertain their rights and

19   duties in order to avoid a multiplicity of actions and to avoid conflicting claims relating to the

20   foregoing matters.

21        45.    By virtue of the foregoing and the matters set forth in this complaint, Plaintiff

22   requires and is entitled to a full and complete judicial declaration as to the relative rights and

23   duties of the parties with respect thereto, including that:

24             a.      The benefits are due to Plaintiff under the terms of the Policy; and

25             b.      For such other and further declaratory relief as the Court deems just and

26   proper.

27

28

- 8 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

***FIFTH CAUSE OF ACTION FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.***
**(By Plaintiff against All Defendants)**

46.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint as though fully set forth herein.

47.     As alleged herein, Defendant has committed acts of unfair competition, as defined by Business and Professions Code section 17200, et seq.

48.     These business acts and practices, as described in this complaint, violate Business and Professions Code section 17200, et seq. and constitute unfair and/or unlawful business acts or practices within the meaning of Business and Professions Code section 17200, et seq.

49.     As a result of the aforementioned acts, Plaintiff seeks disgorgement of any commissions paid to Defendant, disgorgement of any premiums paid to Defendant, and for payment of the benefits under the Policy to Plaintiff.

***PRAYER FOR RELIEF***

WHEREFORE, Plaintiff requests the entry of judgment in its favor, against Defendant, as specified above in each respective cause of action, and pray for relief, as appropriate and applicable with regard to the various causes of action set forth above, as follows:

1.     For damages in an amount to be proven at the time of trial;

2.     For all incidental and consequential damages in an amount to be proven at the time of trial;

3.     For equitable relief as appropriate;

4.     For punitive and exemplary damages as allowed by law in an amount to be determined at the time of trial;

5.     For attorneys' fees as allowed by law;

6.     For costs of suit as allowed by law;

7.     For Plaintiff's disgorgement of profits;

8.     For the judicial determination that Defendant must pay Plaintiff benefits under the

- 9 -

Policy;

9.    For such other and further declaratory relief as the Court deems just and proper;

10.   For interest at the maximum legal amount allowed; and

11.   For such other and further relief as this Court deems proper.

Dated: April 8, 2021                              BEST BEST & KRIEGER LLP

By:

SCOTT W. DITFURTH
CHRISTOPHER M. MOFFITT
Attorneys for Plaintiff
ROMAN CATHOLIC BISHOP OF
SACRAMENTO

LAW OFFICES OF
BEST BEST & KRIEGER LLP
3390 UNIVERSITY AVENUE, 5TH FLOOR
P.O. BOX 1028
RIVERSIDE, CALIFORNIA 92502

- 10 -

51316.00003\33675430.3

# EXHIBIT A

# Transamerica Premier Life Insurance Company

A Stock Company
Administrative Office: 9245 Laguna Springs Drive, Suite 320, Elk Grove, CA  95758
Phone: 916-226-2010

Transamerica Premier Life Insurance Company, ("the Company"), agrees to reimburse the Insured as outlined under the provisions of this Excess Loss Insurance policy ("Policy").

This Policy is legally binding between the Insured and the Company.  The consideration for this Policy includes, but is not limited to, the Application and the Payment of premiums as provided hereinafter.

The Insured is entitled to the reimbursement described in this Policy if the Insured is eligible for insurance under the provisions of this Policy.  Reimbursement is subject to the terms and conditions of this Policy.

The first premium is due on the first (1st) day of the Policy Period.  Subsequent monthly premiums are due on the first (1st) day of each month thereafter.  The premium is not considered paid until the premium payment is received by the Company.

All periods of coverage will begin and end 12:01 a.m. local time at the principal office of the Insured.

This Policy is delivered in and is governed by the laws of the state of issue.

**IN WITNESS WHEREOF** the Company has caused this Policy to be executed by its President and Secretary at our Home Office in Cedar Rapids, Iowa.

Secretary                                     President

## EXCESS LOSS INSURANCE POLICY

SL40CCA (3/07)

**TABLE OF CONTENTS**

SCHEDULE OF EXCESS LOSS COVERAGE

DEFINITIONS

CONDITIONS FOR COVERAGE

PREMIUM AND FACTORS PROVISIONS

REIMBURSEMENT PROVISIONS

TERMINATION PROVISIONS

REINSTATEMENT PROVISIONS

SUBSEQUENT POLICY PERIOD PROVISIONS

GENERAL PROVISIONS

GENERAL EXCLUSIONS PROVISION

AGGREGATING SPECIFIC DEDUCTIBLE ENDORSEMENT

SPECIFIC EXPEDITED REIMBURSEMENT ENDORSEMENT

CONT-1

**Transamerica Premier Life Insurance Company**
Administrative Office: 9245 Laguna Springs Drive, Suite 320, Elk Grove, CA  95758
Phone: 916-226-2010

### SCHEDULE OF EXCESS LOSS COVERAGE

This Schedule of Excess Loss Coverage is only applicable to Excess Loss Insurance provided by the Company during the Policy Period shown below.

Insured:  **Roman Catholic Bishop of Sacramento**
Policy Number:  **TPLICP-5017**     Effective Date:  **01/01/2017**

Coverage specified herein is applicable only during the Policy Period from **01/01/2017** to **01/01/2018** and is further subject to all terms and conditions of this Policy.

Actively at Work/Disability requirement.   ☒ Applied    ☐ Waived with Approved Disclosure
The Actively at Work/Disability requirement is explained in the definition of "Covered Person" in the Definitions Section.

**SPECIFIC EXCESS LOSS INSURANCE:**   ☒ YES       ☐ NO
Benefit Period: Covered Expenses Incurred from **01/01/2017** through **12/31/2017**,
and Paid from **01/01/2017** through **12/31/2018**; however, if the Policy is terminated before the end of the originally scheduled Policy Period set forth above, Covered Expenses must be Incurred from **01/01/2017** through the termination date and Paid from **01/01/2017** through the termination date to be eligible for reimbursement.
Covered Expenses Incurred from **N/A** through **N/A** will be limited to **N/A**
per ☒ Covered Person ☐ Family.
Specific Deductible per ☒ Covered Person ☐ Family: **$250,000**
Specific Percentage Reimbursable: **100%**
Maximum Specific Benefit ☒ per Covered Person   ☐ per Family (including Specific Deductible):
     ☐ $500,000 ☐ $1,000,000 ☐ $2,000,000 ☒ Other **No limit** for the Benefit Period described above;
no lifetime maximum

Specific Excess Loss Insurance includes:
   ☐ Medical only   ☒ Medical with Stand Alone Prescription Drug Program

| Specific Premium Rates per Month | | |
|---|---|---|
| Covered  Units | Number of Units on Effective Date | Rate per Covered Unit |
| Single | **965** | **$48.23** |
| Family | **227** | **$139.60** |

**AGGREGATE EXCESS LOSS INSURANCE:**            ☐ YES            ☒ NO

Benefit Period: Covered Expenses Incurred from **N/A** through **N/A**,
and Paid from **N/A** through **N/A**; however, if the Policy is terminated before the end of the originally scheduled Policy Period set forth above, no reimbursement will be made under Aggregate Excess Loss Insurance.
Losses Incurred prior to the effective date will be limited to **N/A**.
Aggregate Excess Loss Insurance includes:
☐ Medical only                       ☐ Medical with Stand Alone Prescription Drug Program
☐ Dental                             ☐ Weekly (Disability) Income
☐ Vision                             ☐ Other (Please Specify) _____

SCHED-1

Aggregate Percentage Reimbursable: **N/A%**
Maximum Aggregate Benefit: **N/A**
Minimum Annual Aggregate Deductible: **N/A** or **N/A%** of the first Monthly Aggregate Deductible amount times 12, whichever is greater.
Loss Limit per Covered Person **N/A**

Aggregate Excess Loss Premium: ☐ Monthly ☐ Annually

| Monthly Aggregate Factors | | | | | |
|---|---|---|---|---|---|
| Covered Units | Medical | Prescription Drugs | Dental | Vision | WI |
| N/A | **N/A** | **N/A** | **N/A** | **N/A** | **N/A** |

**SPECIAL CONDITIONS:**
If a claim under the Plan is denied by the Plan, the Plan or the Insured may give notice to the Company of the claim ("Notice of Denied Claim"), including information about the amount of the expenses, the nature of the expenses, when the expenses were Incurred, and the Covered Person who incurred the expenses. If the expenses giving rise to the claim were Incurred by the Covered Person during the Benefit Period set forth above, and the Notice of Denied Claim is given to the Company within the time period required by the Benefit Period for expenses to be Paid, and the Plan's claim decision is later reversed by an IRO pursuant to procedures established by the Plan as required by the federal Patient Protection and Affordable Care Act, the Company will treat the claim as being Paid on the date notice of denial of the claim was sent by the Plan to the Covered Person, subject to the following conditions: (a) the claim must be Paid by the Plan within thirty (30) days after the claim decision is reversed; (b) satisfactory proof of loss complying with all terms and conditions of this Policy must be submitted to the Company within sixty (60) days after the claim decision is reversed; (c) the claim must not be covered under another excess loss policy issued to the Insured, and (d) the Specific Expedited Reimbursement Option will not be available.

"IRO" means an independent review organization that is accredited by URAC or by a similar nationally recognized accrediting organization to conduct external reviews of claim decisions under health plans.

**The Named Aggregating Specific Deductible applies to the following claimants - any amounts excess the specific deductible up to the combined ASD will apply only to Carla Nelson, Lisa Hyland and Sally Stone**

**ENDORSEMENTS ATTACHED TO AND MADE PART OF POLICY AT EFFECTIVE DATE:**

PREMIUM

|     |     |     |     |     |
| --- | --- | --- | --- | --- |
| (a) | Aggregate Accommodation Endorsement: | ☐ YES | ☒ NO | |
| (b) | Aggregate Terminal Liability Endorsement: | ☐ YES | ☒ NO | |
| (c) | Aggregating Specific Deductible Endorsement: | ☒ YES | ☐ NO | **$560,000** |
| (d) | Specific Expedited Reimbursement Endorsement: | ☒ YES | ☐ NO | **Included** |
| (e) | Specific Terminal Liability Endorsement: | ☐ YES | ☒ NO | |
| (f) | Other Endorsement: _____ | ☐ YES | ☒ NO | . |

ACCEPTED BY THE INSURED THIS _____ DAY OF _____, 20_____

Authorized Signature: _____

Printed Name: _____

Title: _____

Date: _____


SCHED-2

## DEFINITIONS

**ACTIVELY AT WORK** means the performance of all the regular duties of employment by the Covered Employee for the Insured on a full-time basis (as specified in the Plan Document), at normal pay at the Covered Employee's normal place of business. An employee will be considered Actively at Work on each day of a regular paid vacation or a regular non-working day on which he or she is not disabled, if he or she was Actively at Work on his or her last scheduled work day.

**AGGREGATE PERCENTAGE REIMBURSABLE** is set forth in the Schedule of Excess Loss Coverage.

**ANNUAL AGGREGATE DEDUCTIBLE** for any one Policy Period means the greater of: (a) sum of the Monthly Aggregate Deductibles; or (b) the Minimum Annual Aggregate Deductible.

**BENEFIT PERIOD** means the period of time specified in the Schedule of Excess Loss Coverage in which a Covered Expense must be Incurred by the Covered Person and Paid by the Plan to be eligible for reimbursement under this Policy. This period does not alter the Effective Date, Policy Period, or waive this Policy's eligibility requirements.

**COVERED EMPLOYEE** means an employee of the Insured who is eligible for coverage under the Plan, and is otherwise eligible for benefits under the Plan and covered under the Plan. If the Insured is an organization whose members or employees of members are eligible for coverage under the Plan, "Covered Employee" means a member or employee of a member who is eligible for coverage under the Plan, and is otherwise eligible for benefits under the Plan and covered under the Plan.

**COVERED EXPENSE** means medical or other expenses under the Plan to which this Policy applies, as shown in the Schedule of Excess Loss Coverage, and which are not specifically excluded by the terms of this Policy. Covered Expense does not include any payment for the cost of administrating the Plan or other Insured contracted services.
This Policy will reimburse, as a Covered Expense, the patient services tax as imposed by the New York Care Reform Act of 1996 (HCRA) or the surcharge imposed by the Massachusetts Uncompensated Care Pool. Any other tax or surcharge levied by any state or other governmental subdivision will not be considered a Covered Expense under this Policy.

**COVERED PERSON** means (a) a Covered Employee, (b) a dependent of a Covered Employee which dependent is eligible for coverage under the Plan, and is otherwise eligible for benefits under the Plan and covered under the Plan, or (c) if requested in the application, a covered retired employee as defined by the Plan Document; however, unless the Actively at Work/Disability requirement is waived as shown on the Schedule of Excess Loss Coverage, a Covered Person does not include:
    (1) any Covered Employee who is not Actively at Work either on the Effective Date or the effective date of his or her coverage under the Plan, whichever is later, or eligible dependents of such Covered Employee, until the Covered Employee returns to Actively at Work status; or
    (2) any dependent of a Covered Employee if such dependent is, on the Effective Date or the effective date of his or her coverage under the Plan, whichever is later, either hospital-confined or unable to perform the normal activities of a person of like sex and age in good health, until the end of such confinement or disability.
Waiver of the Actively at Work/Disability requirement does not affect the obligation of the Insured and the Third Party Administrator to disclose information requested by the Company for underwriting purposes and does not affect the Company's rights in event of failure to disclose such information.

**COVERED UNIT** means the following: (a) an employee covered as one individual under the Plan; (b) an employee and dependents covered under the Plan; or (c) such other defined unit or units as agreed upon between the Company and Insured. The types of Covered Units and the factors and premium rates for each type are shown in the Schedule of Excess Loss Coverage.

**EFFECTIVE DATE** is the date set forth in the Schedule of Excess Loss Coverage.

**EMPLOYEE BENEFIT PLAN** (Also known as the PLAN) means the self-funded health care plan established by the Insured to provide certain benefits to Covered Persons.

**INCURRED** means with respect to medical services or supplies, the date on which the services are rendered or supplies are purchased by the Covered Person; and, with respect to disability income benefits if selected in the Schedule of Excess Loss Coverage, the date each periodic benefit payment becomes payable to the Covered Person (not the date the disability commences).

**INSURED** means the entity requesting Excess Loss Insurance.

**LOSS, LOSSES** means amounts actually Paid by the Plan for Covered Expenses.

**LOSS LIMIT PER COVERED PERSON** is set forth in the Schedule of Excess Loss Coverage. However, if claims are Paid under the Plan for a Covered Person for benefits that are covered under Aggregate Excess Loss Insurance, but not covered under Specific Excess Loss Insurance, the Loss Limit for that Covered Person will be increased by the amount of such Payment.

**MAXIMUM AGGREGATE BENEFIT** is set forth in the Schedule of Excess Loss Coverage.

**MAXIMUM SPECIFIC BENEFIT** is set forth in the Schedule of Excess Loss Coverage.

**MINIMUM ANNUAL AGGREGATE DEDUCTIBLE** is set forth in the Schedule of Excess Loss Coverage.

**MONTHLY AGGREGATE DEDUCTIBLE** means, with respect to a particular month, the total number of Covered Units for that given Policy month multiplied by the corresponding Monthly Aggregate Factors as specified in the Schedule of Excess Loss Coverage.   However, in the event of a reduction in the number of Covered Units under the Plan, the Monthly Aggregate Deductible cannot be reduced to less than one twelfth of the Minimum Annual Aggregate Deductible.

**MONTHLY AGGREGATE FACTORS** are set forth in the Schedule of Excess Loss Coverage.

**PAY, PAID, PAYMENT** means checks or drafts issued and deposited in the U.S. Mail or otherwise delivered to the payee, with sufficient funds on deposit to honor all outstanding drafts and checks.

**PLAN DOCUMENT** means the written document approved by the plan sponsor which describes the Plan.  A copy of the Plan Document in effect on the Effective Date is attached to the application for Excess Loss Insurance and made a part of this Policy.

**POLICY PERIOD** means the specified period in the Schedule of Excess Loss Coverage.

**SPECIFIC DEDUCTIBLE** is set forth in the Schedule of Excess Loss Coverage.   The Specific Deductible will apply separately to each Benefit Period.

**SPECIFIC PERCENTAGE REIMBURSABLE** is set forth in the Schedule of Excess Loss Coverage.

**THIRD PARTY ADMINISTRATOR** means a firm or person who has been retained by the Insured to Pay claims and/or provide administrative services on behalf of the Insured/Plan.

## CONDITIONS FOR COVERAGE

Coverage under this Policy is not effective until (a) payment of the first (1st) premium; and (b) receipt of a signed Application for Excess Loss Insurance; and (c) receipt, examination and acceptance by the Company of the Plan Document and all other information which is material to underwriting or premium rating, whether or not specifically requested.

## PREMIUMS AND FACTORS PROVISIONS

**PAYMENT OF PREMIUMS** For coverage to remain in effect, any subsequent monthly premium must be received by the Company by the first (1st) day of each month. Premiums are not considered paid until the premium payment is received by the Company.

Premiums or other payments made by the Insured to their Third Party Administrator or Agent or Broker shall not be deemed or considered payments to the Company until actually received by the Company.

**GRACE PERIOD** A Grace Period of thirty-one (31) days from the due date will be allowed for the payment of each premium after the first. During the Grace Period, the coverage will remain in effect provided the full premium is paid before the end of the Grace Period. Coverage will automatically terminate as of the end of the day on the due date of any premium which remains unpaid at the end of the Grace Period.

**PREMIUM AMOUNT** The premiums will be calculated using rates determined by the Company as set forth in the Schedule of Excess Loss Coverage. The amount of total premium due each month is the sum obtained by multiplying the applicable premium rates shown in the Schedule of Excess Loss Coverage by the actual number of appropriate Covered Units.

The Insured will be liable for any premium taxes assessed at any time against the Company beyond any taxes which may be payable on the premium received by the Company.

All requests for adjustments, credits or refunds because of overpayment of premiums shall be reported, in writing, with accompanying detail within sixty (60) days after termination of the applicable Policy Period.

The Company will not refund any portion of the premiums paid if this Policy terminates during the Policy Period.

**SET OFF** The Company shall be entitled to set off against reimbursements due the Insured under this Policy any premiums due and unpaid, any overpayments or other reimbursements made in error or upon incorrect information, and any other amounts due the Insured.

**PREMIUM RATE AND AGGREGATE DEDUCTIBLE FACTOR CHANGE** The Company may change the Insured's premium rates or factors as of any of the following:

a) the date when the terms of this Policy are changed;
b) the date the Plan Document changes are accepted by the Company;
c) the date the Insured adds or deletes subsidiary or affiliated companies or divisions;
d) the date the number of Covered Units on any premium due date varies more than fifteen percent (15%) from the number of Covered Units on the Effective Date; or
e) the date the Insured changes its Third Party Administrator.

The Company reserves the right to recalculate the premium rates and the Monthly Aggregate Factors retroactively for the Policy Period, if there is more than a ten percent (10%) variance between:

a) the average monthly Paid claim cost per Covered Employee under the Plan for the last two (2) months of the prior Policy Period; and
b) the average monthly Paid claim cost per Covered Employee under the Plan for the first ten (10) months of the prior Policy Period.

## REIMBURSEMENT PROVISIONS

**NOTICE OF LOSS**  The Insured will give written notice of Losses to the Company on the Company's customary proof of loss form, within thirty (30) days of the date the Insured becomes aware of the existence of facts which would reasonably suggest the possibility that expenses covered under the Plan for a Covered Person will be Incurred which are equal to or exceed fifty percent (50%) of the Specific Deductible or $50,000, whichever is less.

**PAYMENT BY PLAN**
While the determination of benefits under the Plan is the responsibility of the Plan, or a party designated by the Plan Document, the Company reserves the right, for purposes of determining benefits under this Policy, to make an independent determination as to whether a particular claim or claims are payable or were properly paid by the Plan, without any deference to the Plan's decision. Any provision in the Plan Document giving a particular party authority or discretion to interpret the Plan Document or determine benefits under the Plan will not be binding on the Company for purposes of determining benefits under this Policy.

The Insured agrees to provide funds for payment of all eligible expenses under the Plan. The Insured will Pay all eligible claims under the Plan within thirty (30) days from the date adequate proof of loss is provided to the Insured. If the Insured fails to Pay a claim within the thirty (30) day time limit, that claim will not count toward the satisfaction of the deductibles or be reimbursed under this Policy.

The Insured agrees to provide funds for payment of all eligible expenses under the Plan.

**SPECIFIC EXCESS LOSS INSURANCE**
The Schedule of Excess Loss Coverage indicates whether Specific Excess Loss Insurance is provided under this Policy. If, while this Policy is in effect, the Losses for a Covered Person for the applicable Benefit Period exceed the Specific Deductible, the Company will reimburse the Insured, subject to the terms and conditions of this Policy including the limits set forth in the Schedule of Excess Loss Coverage, within thirty (30) days after:

   (a)   the Company's acceptance of the proof of loss as a satisfactory proof;
   (b)   the Company's receipt of proof of Payment of the benefits by the Insured under the Plan to, or on behalf of, the Covered Persons; and
   (c)   completion of an audit of the claim, if requested by either the Insured or the Company, which payment by the Insured is expressly agreed to be a condition precedent to payment.

The amount of the reimbursement will be equal to the Specific Percentage Reimbursable times the amount by which Losses exceed the Specific Deductible amount, but will not exceed the Maximum Specific Benefit.

Losses for any Covered Person during the Policy Period will be determined according to the Benefit Period described in the Schedule of Excess Loss Coverage.  The Specific Deductible applies separately to each Covered Person during a Benefit Period.

If Specific Excess Loss Insurance terminates before the end of the Policy Period, the Specific Deductible will not be reduced.

**AGGREGATE EXCESS LOSS INSURANCE**
The Schedule of Excess Loss Coverage indicates whether Aggregate Excess Loss Insurance is provided under this Policy. If the Losses for the applicable Benefit Period subject to the Loss Limit Per Covered Person, exceed the Annual Aggregate Deductible for the Policy Period, the Company will reimburse the Insured, subject to the terms and conditions of this Policy including the limits set forth in the Schedule of Excess Loss Coverage, within thirty (30) days after:

   (a)   the Company's acceptance of proof of loss as satisfactory proof;
   (b)   the Company's receipt of proof of Payment of eligible expenses under the Plan; and
   (c)   completion by the Company of a satisfactory on-site audit of the claims, eligibility and all records relevant to a claim under Aggregate Excess Loss Insurance, if the Company elects to do so.

The amount of the reimbursement will be equal to the Aggregate Percentage Reimbursable times the amount by which Losses exceed the Annual Aggregate Deductible amount, but will not exceed the Maximum Aggregate Benefit. The Annual Aggregate Deductible for any one Policy Period means the greater of: (a) the sum of the Monthly Aggregate Deductibles; or (b) the Minimum Annual Aggregate Deductible.

For purposes of determining amounts payable under this Aggregate Excess Loss Insurance, Losses pertaining to each Covered Person during the Benefit Period will be limited to the Loss Limit Per Covered Person.  Losses will not include any amounts reimbursed by the Company under any other provision of this Policy.  Any Loss that is Incurred at a time when the person to whom the Loss relates is not a Covered Person will not be eligible for Aggregate Excess Loss Insurance and will not be considered for the purpose of satisfying the Annual Aggregate Deductible.

However, if coverage terminates before the end of the Policy Period, the Annual Aggregate Deductible will be deemed not satisfied and the Company will not be liable for reimbursement of any benefits under this Aggregate Excess Loss Insurance.

REIM-2

## TERMINATION PROVISIONS

This Policy and coverage provided hereunder will terminate upon the earliest of:

- a) the premium due date of any premium which remains unpaid at the end of the Grace Period;
- b) the premium due date next following receipt by the Company of written notice from the Insured that this Policy is to be terminated;
- c) the date of termination of the Plan;
- d) the date the Insured suspends active business operations or dissolves; or
- e) the end of the Policy Period.

This Policy may also be terminated, at the Company's option on the earliest of:

- a) the last day of the third (3rd) consecutive month during which there are less than fifty-one (51) employees enrolled in the Plan, unless the Company agrees, in writing, to continue coverage; or
- b) the date the Insured fails to comply with the terms of this Policy.

The Company will not refund any portion of the premiums paid if this Policy is terminated during the Policy Period.

## REINSTATEMENT PROVISIONS

If this Policy terminates for any of the reasons set forth above, the Company may, at its option, approve the Insured's request to reinstate this Policy. The Insured shall submit to the Company any forms and data the Company may require. If this Policy is reinstated, the Insured shall pay to the Company the premiums due from the date this Policy terminated.

## SUBSEQUENT POLICY PERIOD PROVISIONS

At the end of a Policy Period, a subsequent Policy Period may be agreed upon in writing by the Company and the Insured. The terms and conditions for a subsequent Policy Period will be evidenced by the issuance of a new Schedule of Excess Loss Coverage by the Company which shows the new premium rates, Benefit Period and other new terms. This Policy is not automatically renewable.

**GENERAL PROVISIONS**

**ASSIGNMENT**  Reimbursement under this Policy may not be assigned by the Insured, and the Company will not recognize any such assignment.

**AUDITS**  The Company will have the right: (a) to inspect and audit all records and procedures of the Insured and Third Party Administrator, developed and maintained for the Plan, that are applicable to the administration of this Policy; and (b) to require, upon request, proof satisfactory to the Company that Payment has been made to the Covered Person or the provider of such services or benefits which are the basis for any Loss by the Insured hereunder.

**CHANGES TO THE PLAN DOCUMENT**  If the Plan Document in effect on the Effective Date is subsequently amended, notice of the amendment will be given to the Company prior to the effective date of the change.  If the Company does not give written acceptance of the amendment, the Company will only provide coverage under this Policy consistent with the Plan Document prior to amendment.  The Company's reimbursement will be made according to the amended Plan, once the notice is received and accepted.

**CHANGES TO THE POLICY**  Only the President, a Vice President, or the Secretary of the Company have the authority to alter this Policy, or to waive any of the Company's rights and then only in writing.  No such alteration of this Policy shall be valid unless endorsed and attached to this Policy.  No agent, broker, or Third Party Administrator has the authority to alter this Policy or to waive any of its provisions.

**CLERICAL ERROR**  Clerical errors, whether by the Insured or by the Company, in keeping or transmitting any records pertaining to the coverage, will not invalidate or limit coverage otherwise validly in force nor continue coverage otherwise validly terminated. Clerical error does not include any failure of the Insured, the Third Party Administrator or any agent of the Insured: (a) to comply with the requirements relating to notice of claims or payment of claims; or (b) to disclose underwriting information requested by the Company, whether or not intentional and regardless of the actual knowledge of the person providing the information.

**CONCEALMENT, FRAUD**  This entire Policy will be void (a) if, before or after a claim or Loss, the Insured, the Third Party Administrator or any agent of the Insured has concealed or misrepresented any material fact or circumstance concerning this Policy, including any claim, or (b) in any case of fraud by the Insured, the Third Party Administrator, or any agent of the Insured relating to this Policy.

**CONFORMITY WITH LAW**  If any provision of this Policy is contrary to any law to which it is subject, such provision is hereby amended to conform to the minimum requirements of such law.

**ENTIRE CONTRACT**  The Entire Contract between the Company and the Insured will consist of this Policy, the application, approved amendments or endorsements, and a copy of the Plan Document which is on file with the Company.

**INSOLVENCY**  Nothing in this Policy shall either relieve an insolvent or bankrupt Insured from the obligation to pay premiums when due or delay or abate cancellation of this Policy for failure to do so.  The insolvency, bankruptcy, financial impairment, receivership, voluntary plan of arrangement with creditors, or dissolution of the Insured or the Insured's Third Party Administrator will not impose upon the Company any liability other than the liability defined in this Policy.  In particular, the insolvency of the Insured will not make the Company liable to the creditors of the Insured , including Covered Persons under the Plan.

**INSURED REQUIREMENTS**  The Insured will submit by the twentieth (20th) day of each month all proofs, reports, and supporting documents required by the Company, including, but not limited to, a monthly summary of all eligible claims Payments processed by the Insured and number of each type of Covered Units under the Plan during the prior month. The Insured will be responsible for the investigation, auditing, calculating and the Payment of all claims under the Plan.

**LEGAL ACTION**   The Insured cannot file suit until ninety (90) days after the date on which proof of loss is given to the Company.  The Insured cannot file suit more than three (3) years after the date on which the Insured must give the Company proof of claim.  The three (3) year limitation is extended, if necessary, to agree with the period allowed by the laws of the state of issue.

**LIABILITY**   The Company will have neither the right nor the obligation under this Policy to directly pay any Covered Person or provider of professional or medical services. The Company's sole liability is to the Insured, subject to the terms and conditions of this Policy. Nothing in this Policy shall be construed to permit a Covered Person to have a direct right of action against the Company. The Company will not be considered a party to the Plan of the Insured, or to any supplement or amendment to it.

**MISSTATED DATA** The Company has relied upon the underwriting information provided by the Insured, the Third Party Administrator or any agent of the Insured, in the issuance of this Policy.  Should information in existence prior to issuance of this Policy subsequently become known to the Company which would have affected the rates, deductibles, terms or conditions for coverage, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Insured.

**NOTICE FROM THE COMPANY TO THE INSURED**   For the purpose of any notice required from the Company under the provisions of this Policy, notice to the Insured's Third Party Administrator shall be considered notice to the Insured and notice to the Insured shall be considered notice to the Insured's Third Party Administrator.

**OTHER COVERAGE**   The reimbursement provided by this Policy is in excess of other coverage such as group insurance, excess insurance, insurance, plan benefits, including insurance or plan benefits established by any federal, state, or local law.

**PARTIES TO THE POLICY**   The parties to this Policy are the Insured and the Company. The Company's sole liability under this Policy is to the Insured. This Policy does not create any right or legal relation between the Company and a Covered Person under the Plan. This Policy will not be deemed to make the Company a party to any agreement between the Insured and the Third Party Administrator.

**RECORDS**   The Insured will maintain records of all Covered Persons under the Plan during the Policy Period and for a period of seven (7) years after the end of the Policy Period. The Insured will make all such records available to the Company as needed to evaluate its liability under this Policy.
The Insured will maintain a separate record of any and all amounts Paid in excess of benefits eligible under the Plan.

**SEVERABILITY CLAUSE** Any clause deemed void, voidable, invalid, or otherwise unenforceable, whether or not such a provision is contrary to public policy, will not render any of the remaining provisions of this Policy invalid.

**TERMINATION OF THE INSURED'S PLAN**    The Insured will immediately notify the Company, if the Plan is terminated.

**THIRD PARTY ADMINISTRATOR**   The Insured may retain a Third Party Administrator to act as an agent for the Insured in performing any or all of the duties as designated by the Insured.  Without waiving any of its rights under this Policy, and without making the designated Third Party Administrator a party to this Policy, the Company agrees to recognize the Third Party Administrator as an agent of the Insured.  The Insured will immediately notify the Company in writing if the agreement between the Insured and the Third Party Administrator terminates.

GEN-2

## GENERAL EXCLUSIONS PROVISIONS

The Company will not reimburse the Insured for any of the following:

(a)  Any payment which does not strictly comply with the terms and conditions of the Plan Document;

(b)  Any payment or expense caused by or resulting from war, declared or undeclared, invasion, acts of foreign enemies, hostilities, civil war, rebellion, insurrection, military or usurped power, or martial law or confiscation by order of any government or public authority;

(c)  Any payment for litigation costs and expenses, extra-contractual damages, compensatory damages, exemplary and punitive damages or liabilities, including but not limited to those resulting from negligence, intentional wrongs, fraud, bad faith or strict liability on the part of the Insured, Plan, Third Party Administrator or any agent or representative of the Insured, Plan or Third Party Administrator;

(d)  Any payment or expense for accident or illness arising out of activities performed for profit, including self-employment;

(e)  Any payment for occupational accidents or illnesses which are also eligible expenses covered by Workers' Compensation or Occupational Disease law, or similar legislation, whether or not coverage under such law is actually in force;

(f)  Any payment which is recoverable under the Plan Document's Coordination of Benefits provision;

(g)  Any amount paid which is in excess of the Plan's benefits disclosed, in writing, to the Company;

(h)  Any payment under the Plan on account of a benefit which is not shown on the Schedule of Excess Loss Coverage as a Plan benefit for which coverage is provided under this Policy; or

(i)  Any payment under the Plan not reported to the Company within six (6) months after the end of the Benefit Period.

EXCL-1

**EXCESS LOSS INSURANCE POLICY**

**TRANSAMERICA PREMIER LIFE INSURANCE COMPANY**
**ADMINISTRATIVE OFFICE**
**9245 LAGUNA SPRINGS DRIVE, SUITE 320**
**ELK GROVE, CA  95758**

## Transamerica Premier Life Insurance Company
A Stock Company
Administrative Office: 9245 Laguna Springs Drive, Suite 320, Elk Grove, CA  95758
Phone: 916-226-2010

### *Aggregating Specific Deductible Endorsement*

This Endorsement forms part of the Excess Loss Insurance Policy to which it is attached.

Insured:  Roman Catholic Bishop of Sacramento
Policy Number: TPLICP-5017      Effective Date: 01/01/2017

The Excess Loss Insurance Policy between the Insured and Company is amended as follows:

1.      The following definitions will be added to the Definitions section of the Excess Loss Insurance Policy:

**AGGREGATING SPECIFIC DEDUCTIBLE** is set forth in the Schedule of Excess Loss Coverage.  The Aggregating Specific Deductible will apply separately to each Benefit Period.

**SPECIFIC EXCESS AMOUNT** means the amount by which Losses for a Covered Person for the applicable Benefit Period exceed the Specific Deductible, multiplied by the Specific Percentage Reimbursable.  The Specific Excess Amount may not exceed the Maximum Specific Benefit.

**TOTAL SPECIFIC EXCESS AMOUNT** means the total of the Specific Excess Amounts for all Covered Persons for whom Losses for the applicable Benefit Period exceed the Specific Deductible.

2.      The Specific Excess Loss Insurance Provision is hereby deleted and replaced with the following:

**SPECIFIC EXCESS LOSS INSURANCE**
The Schedule of Excess Loss Coverage indicates whether Specific Excess Loss Insurance is provided under this Policy.  If, while this Policy is in effect, the Losses for a Covered Person for the applicable Benefit Period exceed the Specific Deductible, the Company will calculate the Specific Excess Amount for that Covered Person. The Company will monitor the Specific Excess Amounts for all Covered Persons for the applicable Benefit Period.  No reimbursement under Specific Excess Loss coverage will be due until the Total Specific Excess Amount exceeds the Aggregating Specific Deductible.  The Company will reimburse the Insured the amount by which the Total Specific Excess Amount exceeds the Aggregating Specific Deductible, subject to the terms and conditions of this Policy including the limits set forth in the Schedule of Excess Loss Coverage, within thirty (30) days after:

a)      the Company's acceptance of all proofs of loss as a satisfactory proof;
b)      the Company's receipt of proof of Payment of the benefits by the Insured under the Plan to, or on behalf of, the Covered Persons; and
c)      completion of an audit of the claim, if requested by either the Insured or the Company, which payment by the Insured is expressly agreed to be a condition precedent to payment.

Losses for any Covered Person during the Policy Period will be determined according to the Benefit Period described in the Schedule of Excess Loss Coverage.  The Specific Deductible applies separately to each Covered Person or, if applicable, each family during a Benefit Period.

If Specific Excess Loss Insurance terminates before the end of the Policy Period, the Specific Deductible and the Aggregating Specific Deductible will not be reduced.

3.      All other provisions of the Excess Loss Insurance Policy remain unaffected by this Endorsement.

Executed at our Home Office.

Secretary                                        President

ASD-1 (03/07)

## Transamerica Premier Life Insurance Company
A Stock Company
Administrative Office: 9245 Laguna Springs Drive, Suite 320, Elk Grove, CA 95758
Phone: 916-226-2010

### *Specific Expedited Reimbursement Endorsement*

This Endorsement forms part of the Excess Loss Insurance Policy to which it is attached.

Insured:  Roman Catholic Bishop of Sacramento
Policy Number:  TPLICP-5017      Effective Date:  01/01/2017

### SPECIFIC EXPEDITED REIMBURSEMENT OPTION

An additional provision is hereby added to the terms and conditions for Specific Excess Loss Insurance in the Policy as follows:

**SPECIFIC EXPEDITED REIMBURSEMENT**  Without waiving any rights under the Excess Loss Insurance Policy, the Company hereby establishes Specific Expedited Reimbursement.  The additional terms and conditions under which Expedited Reimbursement will be provided for Specific Excess Loss claims are as follows:

(A)   The claim must be fully processed by the Third Party Administrator and must be ready for payment under the Employee Benefit Plan within the Benefit Period during which the claim was Incurred; and

(B)   The Insured must have Paid under the Employee Benefit Plan, the Specific Deductible for the Covered Person to whom the claim relates, plus, in addition to the Specific Deductible Amount, at least $1,000; and

(C)   The claim, and supporting documentation satisfactory to the Company, must be received by the Company no later than five (5) days prior to the end of the Benefit Period during which the claim was Incurred and processed; and

(D)   The claim must be for more than $1,000.

If the foregoing requirements are satisfied, the Company will promptly send to the Insured reimbursement for the amount that is eligible for reimbursement under Specific Excess Loss Insurance.  Upon receipt of the Expedited Reimbursement, the Insured must pay the Employee Benefit Plan's payment within five (5) days.  The Company's reimbursement may not be deposited until the Employee Benefit Plan's payment has been paid.  If the Insured does not pay the Employee Benefit Plan's payment within the five (5) day period, the reimbursement must be refunded to the Company.

If any portion of the Company's reimbursement is not used to pay the applicable benefits under the Employee Benefit Plan, due to discounting or any other reason, such portion must be returned to the Company within five (5) working days after it is received by the Insured by refund, credit, or otherwise.

If the Insured fails to comply with all of the above conditions, the right to receive Specific Expedited Reimbursement shall be rescinded.

Except as specifically set forth herein, all terms and conditions of the Excess Loss Insurance Policy shall remain in full force and effect.

SPEX-1

This Endorsement is intended solely to provide an optional expedited method of reimbursement between the Company and the Insured, and shall not affect the Employee Benefit Plan or the Insured's obligations under the Employee Benefit Plan in any way, and this Endorsement shall not create any rights in favor of any third party.

All terms and conditions, other than as stated above, remain unchanged.

Executed at our Home Office.

Secretary                                    President

SPEX-2

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Scott Ditfurth, SBN 238127 / Christopher M. Moffitt, SBN 255599<br>Best Best & Krieger LLP<br>3390 University Ave., 5th Floor<br>Riverside, CA  92501<br>TELEPHONE NO.: 951.686.1450     FAX NO.: 951.686.3083<br>ATTORNEY FOR *(Name):* Roman Catholic Bishop of Sacramento | **FILED/ENDORSED**<br><br>APR 0 8 2021<br><br>By: _____ A. Penn _____<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Sacramento**
STREET ADDRESS: 720 9th Street
MAILING ADDRESS: 720 9th Street
CITY AND ZIP CODE: Sacramento, CA  95814
BRANCH NAME: Gordon D. Schaber Sacramento County Courthouse

CASE NAME: Roman Catholic Bishop of Sacramento v. TransAmerica Premier Life Insurance Company, et al.

| CIVIL CASE COVER SHEET<br>☒ Unlimited   ☐ Limited<br>(Amount         (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | Complex Case Designation<br>☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER: 34 2021 00298490<br>JUDGE:<br>DEPT: |
|---|---|---|

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):*  a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: April 7, 2021

Christopher M. Moffitt
(TYPE OR PRINT NAME)                               ► *(signature)*
                                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

BY FAX



**SUPERIOR COURT OF CALIFORNIA**

**County of Sacramento**
720 Ninth Street, Room 102
Sacramento, CA 95814-1311

For Court Use Only

PETITIONER/PLAINTIFF:   Roman Catholic Bishop of Sacramento

RESPONDENT/DEFENDANT:   Transamerica Premier Life Insurance Co., et al.

**ORDER RE: DELAY IN SCHEDULING
INITIAL CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
34-2021-00298490

The Court finds good cause to delay the scheduling of the initial Case Management Conference for this case given the COVID-19 pandemic and its impact on court-wide operations. Among the affected operations is the Court's Case Management Program (CMP). The Court's CMP calendars have been and remain suspended until further notice. After the CMP Departments resume operations, the Court will schedule the initial Case Management Conference in this case and issue a Notice of Case Management Conference and Order to Appear.

The deadline for filing and service of the Case Management Conference Statements will be based upon the date for the initial Case Management Conference once it has been scheduled.

Parties shall continue to accomplish service of all parties named in the action.

Parties shall continue to ensure that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered.

Plaintiff shall serve a copy of this order on any party to the complaint. The cross-complainant shall have the same obligation with respect to the cross-complaint

RICHARD K. SUEYOSHI

Dated: 4/09/2021

_____
Richard K. Sueyoshi, Judge of the Superior Court



**SUPERIOR COURT OF CALIFORNIA**
**County of Sacramento**
**720 Ninth Street**
**Sacramento, CA 95814-1380**
**(916) 874-5522—Website www.saccourt.ca.gov**

**Program Case Notice**
**Unlimited Civil Case**

The Case Management Program (CMP) requires the following timelines to be met in all cases except those that are excluded by California Rule of Court 3.712(b), (c) and (d) and Local Rule 2.46(B), (E) and (F).

| Action | Requirement |
|---|---|
| Service of Summons | Summons, complaint and program case notice must be served on all named defendants and proofs of service on those defendants must be filed with the court within **60 days** from the filing of the complaint. |
| | When the complaint is amended to add a new defendant, the added defendant must be served and proofs of service must be filed within **30 days** after the filing of the amended complaint. |
| | A cross-complaint adding a new party must be served and proofs of service must be filed with the court **30 days** from the filing of the cross-complaint. |
| Statement of Damages | If a statement of damages pursuant to Section 425.11 of the Code of Civil Procedure or a statement of punitive damages is required, it must be served with the summons and complaint. |
| Responsive Pleadings | If a responsive pleading is not served within the time limits and no extension of time has been granted, the plaintiff within **10 days** after the time for service has elapsed must file a request for entry of default. |
| | Parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint. |
| | No extensions of time to respond beyond **105 days** from the filing of the complaint may be given. |
| Judgment by Default | When default is entered, the party who requested the entry of default must apply for a default judgment against the defaulting party within **45 days** after entry of default, unless the court has granted an extension of time. |
| Case Management Statement | The court will provide a notice of case management conference on the filing parties at the time that the case is filed with the court. A case management statement shall be filed at least **15 calendar days** prior to the date set for the case management conference. |
| Mediation Statement | The Mediation Statement shall be filed concurrently with the Case Management Statement, unless the parties have filed a Stipulation for Alternative Dispute Resolution form with the ADR Administrator at any time up to 15 calendar days prior to the Case Management Conference, as required by Local Rule 2.51(E). |
| Meet and Confer | Parties must meet and confer, in person or by telephone as required in California Rules of Court 3.724 at least **30 calendar days** before the case management conference date. |
| Case Management Conference | A case management conference is generally held within **180 days** of the filing of the complaint. |

Failure to comply with the program rules may result in the imposition of sanctions or an order to show cause. Please refer to Local Rules Chapter Two – Part 4 for more information.

**NOTE: THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT.**

Program Case Notice (Unlimited Civil Case)



# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO
### SACRAMENTO, CALIFORNIA, 95814
### 916-874-5522
### WWW.SACCOURT.CA.GOV

## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION PACKAGE

Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the Superior Court of California, County of Sacramento (Sacramento County Superior Court), strongly encourages parties in civil cases to explore and pursue the use of Alternative Dispute Resolution.

**What is Alternative Dispute Resolution?**

Alternative Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include:

- Arbitration
- Mediation
- Settlement Conferences
- Private judging
- Neutral evaluation
- Mini-trials
- Negotiation and *hybrids* of these processes

All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes. At the present time, the Sacramento County Superior Court offers Mediation and Arbitration.

**What are the advantages of using ADR?**

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorneys fees and court expenses.)

- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**Arbitration and Mediation**

Although there are many different types of ADR processes, the types most commonly used to resolve disputes in California state courts are Arbitration and Mediation. The Sacramento County Superior Court currently offers pre-screened panelists with experience and training in each of the following areas.

**Arbitration.** An Arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an Arbitration award. Arbitration awards may be entered as judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitration can be binding if the parties so agree in writing. If there is no such agreement, either party can reject the Arbitration award and request a trial.


**Mediation.** Mediation is a voluntary, informal, confidential process in which the Mediator, a neutral third party, facilitates settlement negotiations. The Mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

Litigants are encouraged to use an ADR process as early in the case as circumstances permit. All appropriate cases will be reviewed for referral to ADR at the Case Management Conference(CMC).

### ADR Procedures for the Sacramento County Superior Court

Upon filing a complaint or cross-complaint, the plaintiff/cross-complainant must acquire this information package from the Court's Website, http://www.saccourt.ca.gov, or the Superior Court Clerk. Plaintiff is required to include the ADR Information Package when he or she serves the Complaint on the Defendant.

The court's ADR Panel List is available on-line at http://www.saccourt.ca.gov or may be obtained at the Civil Filing Counter at the Gordon D. Schaber Sacramento County Courthouse, 720 Ninth Street, Room 101, Sacramento, CA 95814.

**Mediation.**

All parties to the dispute may voluntarily agree to submit the case to a neutral Mediator, either through a court-appointment or through a private arrangement.  The parties may choose either of the following Mediation choices:

> **Private Mediation.**  Parties to a civil action agree to mediate their dispute with a Mediator of their choice without court assistance.  The cost of Mediation must be borne by the parties equally unless the parties agree otherwise.  Parties will be charged an amount as set by the Mediator (refer to the ADR Panel List for current rates).

> **Court Mediation.**  Upon stipulation of the parties, a Mediator and alternate Mediator will be selected from the court-approved list of neutrals (ADR Panel List). The court will confirm the selected Mediator and notice parties by mail.

> The Mediator is then responsible for contacting the parties to confirm a date, time, and place for Mediation.  Mediators on the court's approved ADR Panel List have agreed to provide up to three (3) hours of pro-bono Mediation.  In the event the Mediation extends beyond 3 hours and parties determine it would be beneficial to continue the Mediation process; the parties will independently be responsible for compensating the Mediator in an amount as set by the Mediator.

<u>*UNLIMITED CIVIL CASES*</u>
- A *Stipulation and Order to Mediation – Unlimited Civil Cases,* Form CV\E-MED-179 *(see attached)* may be filed with the court at any time up to 15 calendar days prior to the Case Management Conference.

- If the parties do not stipulate to Mediation prior to their CMC, they may indicate their willingness to stipulate to Mediation at the CMC.  In that event, parties must submit a *Stipulation and Order to Mediation – Unlimited Civil Cases* within 14 calendar days after their CMC.

- A *Mediation Statement* must be filed with the *Case Management Statement*.

<u>LIMITED CIVIL CASES</u>
- Parties may select and conduct voluntary Private Mediation without notification to the Court.

- Parties may stipulate to court mediation by filing a Stipulation and Order to Arbitration/Mediation - Limited Civil Cases form (CV\E-203) at any time after the filing of the Limited Civil Case Status Memorandum form (CV\E-202). This form is located on the court's website at http://www.saccourt.ca.gov. A Stipulation and Order to Arbitration/Mediation – Limited Civil Cases MUST be filed concurrently or subsequent to a Limited Civil Case Status Memorandum.



Superior Court of California, County of Sacramento

Case Management

## Arbitration
### *UNLIMITED CIVIL CASES*

- Plaintiff may elect, the parties may stipulate, or the judge may Order the case to Arbitration. Parties will be asked to select an Arbitrator and three alternate Arbitrators from the court's ADR Panel List. The court will send a Notice of Appointment and an appropriate Order to Arbitration to all parties.

- Arbitrations are conducted pursuant to California Rules of Court, rules 3.810 through 3.830, and Local Rules Chapter 2, Part 5. Unless otherwise stipulated, an Award of Arbitrator is not binding upon the parties provided that they file a timely Request for Trial De Novo pursuant to California Rules of Court, rule 3.826. Upon the filing of a timely Request for Trial De Novo, the case will proceed to a Trial-Setting Conference. If no timely Request for Trial De Novo is filed, judgment based upon the Award of Arbitrator will be entered pursuant to California Rules of Court, rule 3.827.

### LIMITED CIVIL CASES
Arbitration may occur in a limited civil case under the following circumstances:

- When all parties stipulate to arbitration pursuant to Code of Civil Procedure section 1141.12. A stipulation for arbitration shall be filed using the Court's local form, Stipulation and Order to Arbitration/Mediation – Limited Civil Cases form (CV\E-203). A Stipulation and Order to Arbitration/Mediation – Limited Civil Cases MUST be filed concurrently or subsequent to a Limited Civil Case Status Memorandum form (CV\E-202).

- When plaintiff elects to refer the case to judicial arbitration. A written election by the plaintiff to submit an action or proceeding to arbitration shall be filed using the Court's local form, Limited Civil Case Status Memorandum form (CV\E-202).

### Additional Information
For additional information regarding the Court's ADR program, please go to the Court's website http://www.saccourt.ca.gov.

Created with a trial version of Syncfusion Essential PDF

**CT Corporation**

**Service of Process Transmittal**
05/11/2021
CT Log Number 539533932

| | |
|---|---|
| **TO:** | General Counsel<br>Transamerica Life Insurance Company<br>4333 EDGEWOOD RD NE<br>CEDAR RAPIDS, IA 52499-0002 |

**RE:** **Process Served in California**

**FOR:** Transamerica Premier Life Insurance Company  (Domestic State: IA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ROMAN CATHOLIC BISHOP OF SACRAMENTO, etc., Pltf. vs. Transamerica Premier Life Insurance Company, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 34202100298490 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/11/2021 at 11:12 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 05/11/2021, Expected Purge Date: 05/16/2021<br><br>Image SOP<br><br>Email Notification,  General Counsel<br> OfficeOfTheGeneralCounsel@Transamerica.com |
| **REGISTERED AGENT ADDRESS:** | Vivian Imperial<br>818 West 7th Street<br>Los Angeles, CA 90017<br>877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**            Tue, May 11, 2021

**Server Name:**     Douglas Forrest

| Entity Served | TRANSAMERICA PREMIER LIFE INSURANCE COMPANY |
|---|---|
| Agent Name | C3614100 |
| Case Number | 34202100298490 |
| Jurisdiction | CA |

